# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LASHAWN BAREFIELD, | ) | CIV-F-05-0633 AWI TAG |
| | ) | |
| Plaintiff, | ) | ORDER RE: MOTION TO DISMISS |
| | ) | |
| v. | ) | ORDER DENYING PRIOR |
| | ) | MOTION TO DISMISS FIRST |
| CALIFORNIA STATE UNIVERSITY | ) | AMENDED COMPLAINT AS |
| BAKERSFIELD, and DOES 1 through | ) | MOOT (DOC. 11) |
| 50 inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

Defendant has made a motion to dismiss parts of Plaintiff's second amended complaint. Plaintiff has opposed the motion, and the matter was taken under submission without oral argument.

## I. History

Plaintiff Lashawn Barefield ("Barefield") is an African American female who has been employed by Defendant California State University Bakersfield ("CSUB"[1]) as a Student Services Professional/ Academic Related I since January 2001 . On August 19, 2003, CSUB posted an

---

[1]CSUB represents that the true defendant in this case is the Board of Trustees of the California State University instead of California State University Bakersfield. Doc. 36, Brief, at 1:19-20.

1    opening for the position of Director of Student Activities[2].  Barefield, who already had a master's

2    degree, applied for the position.  In September 2003, CSUB hired another existing CSUB

3    employee, Marina Avalos-Kegley, a non-African American female who was in the process of

4    obtaining her master's degree, as Interim Director of Student Activities.  By letter dated

5    December 9, 2003, Barefield was informed that she was no longer being considered for the

6    permanent position without ever having been interviewed.  Marina Abvalos-Kegley completed

7    her master's degree in 2004 and was ultimately hired as the permanent Director of Student

8    Activities.

9        Barefield alleges that starting on or about October 10, 2003, CSUB racially discriminated

10   against her in failing to promote her to the permanent Director of Student Activities position.

11   Barefield represents that she had received positive reviews of her work as a Student Services

12   Professional in her annual Unit Retention, Promotion, and Tenure Evaluation and a previous

13   supervisor (retired) wrote a letter of recommendation to the committee which produced the

14   review.  Her supervisors in 2003 were Bill Perry, CSUB Assistant Vice President of Student Life,

15   and Diane Hendrickson, CSUB Interim Division Director.  Barefield states she discussed her

16   intention to seek the promotion with them prior to actually submitting her application, receiving

17   positive responses from both.  According to Barefield,  Hendrickson advised Barefield to prepare

18   for an interview as she was sure to get one.  Barefield also claims that Hendrickson told her she

19   would probably get the position as she was the most qualified of the people who expressed

20   interest.  As a result of the denial of her promotion, Barefield alleges she has suffered emotional

21   and physical harm for which she has been receiving medical care.

22       Barefield filed suit on May 10, 2005 against CSUB and Doe defendants. Doc. 1.  The

23   complaint was addressed to the Superior Court of California, County of Kern but was filed in the

24   United States District Court in Fresno.  Her initial complaint alleged the following causes of

25   action: violation of Cal. Gov't Code §12940 et seq. ("FEHA"), violation of 42 U.S.C. §1981,

26   _____

27       [2]In the Second Amended Complaint, Barefield makes reference to both "Director of
     Student Activities" and "Director of Student Services."  The court understands the two titles to
28   refer to the same position.

breach of contract, breach of the covenant of good faith and fair dealing, and intentional infliction of emotional distress.  Barefield filed an amended complaint on July 21, 2005 which was identical to her initial complaint, only addressed to the United States District Court. Doc. 6.  CSUB filed a motion to dismiss on August 16, 2005. Doc. 11.  The motion sought to dismiss Barefield's breach of contract, breach of the covenant of good faith and fair dealing, and Section 1981 claims for failure to state a claim upon which relief can be granted under Fed. R. Civ. Proc. 12(b)(6).  CSUB further sought the dismissal of the entire suit for lack of federal subject matter jurisdiction under Fed. R. Civ. Proc. 12(b)(1) on the assumption that the Section 1981 claims would be dismissed.  Alternatively, the motion sought to strike Barefield's request for punitive damages under Fed. R. Civ. Proc. 12(f).  Barefield opposed the motion in its entirety.  The matter was taken under submission without oral argument.  Contemporaneously, Barefield filed a motion to amend her complaint under Fed. R. Civ. Proc. 15 on September 8, 2005. Doc. 13.  Magistrate Judge Theresa Goldner granted the request by order of November 1, 2005. Doc. 29.  Barefield filed a corrected second amended complaint, the operative complaint, on November 17, 2005 which added a claim for violation of 42 U.S.C. §2000(e) et seq. ("Title VII"). Doc. 31.  The second amended complaint mooted CSUB's submitted motion to dismiss as federal subject matter jurisdiction would remain regardless of any dismissal of Barefield's Section 1981 claim.

On November 30, 2005, CSUB filed a new motion to dismiss. Doc. 35.  The new motion is in fact identical to the old motion minus the request for dismissal of the suit for lack of federal subject matter jurisdiction.  Barefield filed an opposition on December 23, 2005. Doc. 38.  CSUB filed a reply on January 3, 2006. Doc. 39.  The matter was taken under submission without oral argument by order of January 5, 2006. Doc. 40.

## II. Legal Standards

### A. Fed. R. Civ. Proc. 12(b)(6)

In considering a motion to dismiss under Rule 12(b)(6), the court must accept as true the allegations of the complaint in question. Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976).  The court will construe the pleading in the light most favorable to the party

opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  Absent unusual circumstances, dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by amendment. Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996).

When a defendant challenges the legal sufficiency of a complaint, the court's review is limited to the complaint. Cervantes v. City of San Diego, 5 F.3d 1273, 1274 (9th Cir. 1993).  As a general matter, a district court may not consider any material outside of the pleadings when ruling on a Rule 12(b)(6) motion. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  Material properly submitted as part of the complaint and materials the court may take judicial notice of may be considered. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  If the parties present the court with any other evidence and the court considers it, the court must converting the Rule 12(b)(6) motion into a motion for summary judgment. Fed. R. Civ. Pro. 12(b)(6); Anderson v. Angelone, 86 F.3d 932, 934-35 (9th Cir. 1996).

**B. Fed. R. Civ. Proc. 12(f)**

Rule 12(f) allows the court to strike from "any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The purpose of a Rule 12(f) motion is to avoid the costs that arise from litigating spurious issues by dispensing with those issues prior to trial. See Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir.1983).  Immaterial matter is defined as matter that "has no essential or important relationship to the claim for relief or the defenses being pleaded." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir 1993), rev'd on other grounds 510 U.S. 517 (1994).  Impertinent matter is defined as "statements that do not pertain, and are not necessary, to the issues in question." Fantasy, Inc. v. Fogerty, 984 F.2d

1524, 1527 (9th Cir 1993).  Motions to strike are generally viewed with disfavor and are not

frequently granted. See <u>Bassiri v. Xerox Corp.</u>, 292 F. Supp. 2d 1212, 1220 (C.D. Cal. 2003).

Courts must view the pleading under attack in the light more favorable to the pleader. <u>Bassiri v.

Xerox Corp.</u>, 292 F. Supp. 2d 1212, 1220 (C.D. Cal. 2003).  Accordingly, "motions to strike

should not be granted unless it can be shown that no evidence in support of the allegation would

be admissible, or those issues could have no possible bearing on the issues in the litigation."

<u>Gay-Straight Alliance Network v. Visalia Unified School Dist.</u>, 262 F. Supp.2d 1088, 1099 (E.D.

Cal. 2001).  Nevertheless, a motion to strike may be used to strike a prayer for relief where the

damages sought are not recoverable as a matter of law. See <u>Gay-Straight Alliance Network v.

Visalia Unified School Dist.</u>, 262 F. Supp.2d 1088, 1110-11 (E.D. Cal. 2001); <u>Bureerong v.

Uvawas</u>, 922 F. Supp. 1450, 1479 n.34 (C.D. Cal. 1996); <u>Nurse v. United States</u>, 226 F.3d 996,

1004-05 (9th Cir. 2000).  Granting a motion to strike may be proper if it will make the trial less

complicated or if allegations being challenged are so unrelated to plaintiff's claims as to be

unworthy of any consideration as a defense and that their presence in the pleading will be

prejudicial to the moving party. <u>Fantasy, Inc. v. Fogerty</u>, 984 F.2d 1524, 1527 (9th Cir 1993).

### III. Discussion

**A. State Contract Claims**

CSUB seeks to have the breach of contract and breach of the covenant of good faith and

fair dealing claims (the second and third causes of action) dismissed.  These claims are purely

state law matters and CSUB cites to California Supreme Court precedent.  "[I]t is well settled in

California that public employment is not held by contract but by statute and that, insofar as the

duration of such employment is concerned, no employee has a vested contractual right to

continue in employment beyond the time or contrary to the terms and conditions fixed by law."

<u>Miller v. State</u>, 18 Cal. 3d 808, 813 (Cal. 1977).  "Plaintiff has also attempted to state a cause of

action for breach of contract or breach of the implied covenant of good faith and fair dealing.

However, because plaintiff is a civil service employee, he cannot state such a cause of action."

<u>Shoemaker v. Myers</u>, 52 Cal. 3d 1, 23 (Cal. 1990).

1    Barefield cites to a number of cases that purport to demonstrate how public employees

2    can indeed sue for breach of contract and breach of the covenant of good faith. See Doc. 38,

3    Opposition, at 6:1-15.  First, Barefield cites to two old California Supreme Court cases: Kern v.

4    Long Beach, 29 Cal. 2d 848, 852 (Cal. 1947) and Dryden v. Board of Pension Comm'rs, 6 Cal.

5    2d 575 (Cal. 1936).  In both cases, the issue was whether public employees' pension benefits

6    were deemed to be protected by contract.  Miller makes a distinction between employment and

7    pension benefits, finding that while public employment is statutory and not subject to suit based

8    on contract, already accrued pension benefits are protected under contract. Miller v. State, 18

9    Cal. 3d 808, 813 (Cal. 1977).  Another case cited, Foley v. Interactive Data Corp., 47 Cal. 3d 654

10   (Cal. 1988), dealt with private employment, not public employment, and stated generally that

11   there is no tort (independent of contract) for a breach of the implied covenant of good faith and

12   fair dealing in an employment contract.

13   The slightly puzzling case is Mouchette v. Board of Education, 217 Cal. App. 3d 303

14   (Cal. Ct. App. 1990).  In Mouchette, a coordinator of risk and insurance programs for the

15   Oakland Unified School District was fired.  He sued the school board, the school district, and a

16   member of the board for wrongful termination, including a claim for breach of the implied

17   covenant of good faith and fair dealing.  CSUB tries to distinguish the case by saying that the

18   case dealt with a breach of the implied covenant of good faith and fair dealing based in tort, and

19   not in contract. Doc. 39, Reply, at 3:16-17.  However, the opinion states, "The Board contends

20   that Mouchette's claim for tortious breach of the implied covenant of good faith and fair dealing

21   must be dismissed in light of Foley [which] held that tort remedies are not available for breach of

22   the implied covenant of good faith and fair dealing in the employment context. The Foley court,

23   however, did not eliminate the cause of action but simply limited plaintiffs to contractual

24   remedies for breaches of the implied covenant." Mouchette v. Board of Education, 217 Cal. App.

25   3d 303, 315 (Cal. Ct. App. 1990).  While the opinion does not then go on to explicitly state the

26   damages were based on contract and not tort, the quoted language heavily implies that

27   conclusion.  The court does note that statutory employment was not raised as a defense in the

28   opinion. See Mouchette v. Board of Education, 217 Cal. App. 3d 303, 309 (Cal. Ct. App. 1990).

1   The explanation for the confusion may just be that defendants in that case neglected to raise the

2   defense.

3       As <u>Shoemaker</u> unequivocally states with regard to breach of contract, "because plaintiff is

4   a civil service employee, he cannot state such a cause of action." <u>Shoemaker v. Myers</u>, 52 Cal. 3d

5   1, 23 (Cal. 1990).  CSUB's motion to dismiss Barefield's second and third causes of action is

6   granted.  As amendment would be futile, leave to amend is denied.

7

8   **B. Section 1981**

9       Plaintiff's first cause of action includes a claim under 42 U.S.C. §1981.  "All persons

10  within the jurisdiction of the United States shall have the same right in every State and Territory

11  to make and enforce contracts....For purposes of this section, the term 'make and enforce

12  contracts' includes the making, performance, modification, and termination of contracts, and the

13  enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42

14  U.S.C. §1981.  Whether or not employees of the State of California, whose terms of employment

15  are governed by statute, can sue under Section 1981 is an unresolved question.  As the state can

16  change the terms and conditions of the employment by statute without the consent of the

17  employees, there is question as to whether they work under a "contract" as conventionally

18  understood.  At least two Ninth Circuit panels have looked at this issue in unpublished opinions,

19  coming to opposite conclusions.

20      One published Ninth Circuit opinion, dealing with the analogous State of Washington

21  employment scheme, concluded that the state employee in that case did not have standing to sue.

22  See <u>Judie v. Hamilton</u>, 872 F.2d 919, 923 (9th Cir. 1989).  In <u>Judie</u>, the court stated that the

23  analysis must follow a three step process outlined by the U.S. Supreme Court:

24          The century-old Civil Rights Acts do not contain every rule of decision required to
            adjudicate claims asserted under them. In the absence of specific guidance, Congress has
25          directed federal courts to follow a three-step process to borrow an appropriate rule. First,
            courts are to look to the laws of the United States so far as such laws are suitable to carry
26          the civil and criminal civil rights statutes into effect. If no suitable federal rule exists,
            courts undertake the second step by considering application of state common law, as
27          modified and changed by the constitution and statutes of the forum State. A third step
            asserts the predominance of the federal interest: courts are to apply state law only if it is
28          not inconsistent with the Constitution and laws of the United States.

1   Burnett v. Grattan, 468 U.S. 42, 47-48 (1984), citations omitted.  The court in Judie concluded

2   that (1) there is "no federal common law of contracts for section 1981 claims"; (2) Washington

3   law is such that "the terms of public employment, other than pension rights, do not create

4   contractual expectancies"; and (3) there is "no similar inconsistency in Washington state contract

5   law." Judie v. Hamilton, 872 F.2d 919, 922-23 (9th Cir. 1989).  Ultimately, the Ninth Circuit

6   stated point blank: "If the terms of public employment affecting compensation, layoffs, and

7   reemployment do not create contractual expectancies, then we do not believe that Judie's job

8   description creates contractual expectancies either. Judie, therefore, has not established a

9   cognizable claim for violation of the right to contract under section 1981." Judie v. Hamilton,

10  872 F.2d 919, 923 (9th Cir. 1989).

11          At least one district court judge of the Northern District, Judge Martin Jenkins, has come

12  to the same conclusion regarding California employees.  In one case, a plaintiff alleged that he

13  was subject to disparate treatment in receiving a suspension on the basis of race.  "Since a

14  contract of employment does not control the terms and conditions of civil service employment

15  with the City, Zimmerman cannot establish a claim under §1981." Zimmerman v. City & County

16  of San Francisco, No. C 93-4045 MJJ, 2000 U.S. Dist. LEXIS 10866 at *32 (N.D. Cal., July 27,

17  2000).  In another case heard by Judge Jenkins, the dicta included the statement that "Plaintiff

18  cannot state any violation of 42 U.S.C. §1981 because the Court did not grant him leave to

19  pursue this claim; California's two-year personal injury statute of limitations bars this claim; and

20  public employees hold employment pursuant to statute, not contract." Batiste v. City of

21  Emeryville, No. C-03-4392 MJJ, 2004 U.S. Dist. LEXIS 15789 at *5 (N.D. Cal., August 2,

22  2004).

23          Not all courts agree.  In one case arising in the Eastern District of Pennsylvania, plaintiff

24  was an at-will employee of the public library without a contract.  Pennsylvania precedent found

25  that a public employer could not enter into an employment contract absent statutory authority,

26  which was not present in this case.  Nevertheless, the court said, "the presence or absence of a

27  'contract' is not dispositive of Plaintiff's §1981 claim. Therefore, that Defendants could not have

28  possibly entered into an employment contract with Plaintiff is superfluous. A §1981 claim is

**8**

1  cognizable when brought by an at-will employee such as Plaintiff when it is alleged that an

2  employer adversely altered an employee's working conditions because of or in consideration of

3  said employee's race." Marquess v. City of Philadelphia, NO. 98-1117, 1999 U.S. Dist. LEXIS

4  15958 at *4 (E.D. Pa., October 5, 1999).

5       Barefield cites to one published Ninth Circuit case where an individual sued was denied

6  employment by the San Mateo District Attorney's office and then successfully brought suit under

7  Sections 1981 and 1983. Ramirez v. San Mateo County Dist. Attorney's Office, 639 F.2d 509,

8  510 (9th Cir. 1981).  However, the opinion does not discuss the issue raised by CSUB: whether

9  state employment, regulated by statute, is a "contract" within the meaning of Section 1981.

10  Again, in the absence of any mention of the issue, the court will not presume that it was raised in

11  the proceedings.

12       In the end, the Ninth Circuit's ruling Judie is persuasive.  Judie identified the analysis to

13  be undertaken and found that the Washington system of statutory employment, which did not

14  involve "contracts" with employees cognizable under Section 1981, was not inconsistent with

15  federal law.  As discussed above, California law similarly finds state employment to be statutory.

16  Barefield's Section 1981 claim must be dismissed.

17

18  **C. Punitive Damages**

19       CSUB seeks to have Barefield's request for punitive damages stricken under Fed. R. Civ.

20  Proc. 12(f). Doc. 36, Brief, at 6:6-9.  Barefield makes three arguments in opposition: (1) a prayer

21  for punitive damages in a complaint is not subject to a motion to strike, (2) Barefield may add

22  individual defendants against whom she will seek punitive damages, and (3) CSUB may

23  indemnify these additional defendants against any punitive damage awards. Doc. 38, Opposition,

24  at 6:22-7:5.

25       As to the first argument, courts regularly use Fed. R. Civ. Proc. 12(f) to strike from

26  complaints requests for damages that can not be awarded as a matter of law. See Loskot v. Lulu's

27  Rest., No. CIV. S-00-1497 WBS PAN, 2000 U.S. Dist. LEXIS 22252 (E.D. Cal., November 15,

28  2000); Gay-Straight Alliance Network v. Visalia Unified School Dist., 262 F. Supp.2d 1088,

1110-11 (E.D. Cal. 2001); Bureerong v. Uvawas, 922 F. Supp. 1450, 1479 (C.D. Cal. 1996); Nurse v. United States, 226 F.3d 996, 1004-05 (9th Cir. 2000).  Barefield's second argument is speculative.  In order to name additional defendants, Barefield must comply with Fed. R. Civ. Proc. 15 in seeking amendment to her complaint, at which point she may seek to renew her request for punitive damages.  Argument three is similarly premature.  The fact that CSUB may or may not indemnify these potential defendants does not change the fact that many laws prohibit the award of punitive damages against governmental bodies.  Cal. Gov't Code §825(b) allows a public entity to voluntarily indemnify for punitive damages "in its sole discretion"; no part of that law allows the punitive damage award to be levied directly against the public entity or forces that entity to pay for the punitive damage award levied against another.

As to the substance of the motion to strike, the breach of contract, breach of the covenant of good faith and fair dealing and Section 1981 claims have been dismissed, leaving only the Title VII, FEHA, and intentional infliction of emotional distress claims.  CSUB asserts in general that punitive damages may not be assessed against it pursuant to Cal. Gov't Code §818 which states, "Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant."  As applied against FEHA, the prohibition on punitive damages is valid and any such request is subject to being stricken. State Pers. Bd. v. Fair Employment & Hous. Com, 39 Cal. 3d 422, 434 (Cal. 1985); Inland Mediation Bd. v. City of Pomona, 158 F. Supp. 2d 1120, 1159 (C.D. Cal. 2001); Daniels v. County of San Francisco, No. C-99-05372 CRB, 2000 U.S. Dist. LEXIS 10839 at *5 (N.D. Cal., July 25, 2000).  Similarly, punitive damages are unavailable against a public entity under the intentional infliction of emotional distress cause of action. McAllister v. South Coast Air Quality Etc. Dist., 183 Cal. App. 3d 653, 656 (Cal. Ct. App. 1986); Austin v. Regents of University of California, 89 Cal. App. 3d 354, 358 (Cal. Ct. App. 1979).

Section 818 does not apply against federal laws.  However, under the terms of Title VII itself, punitive damages are not recoverable against governmental entities.  "A complaining party may recover punitive damages under this section against a respondent (other than a government,

government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. §1981a(b)(1).  Barefield cannot collect punitive damages from CSUB under Title VII. See Singleton v. University of California, No. C-93-3496 MHP, 1995 U.S. Dist. LEXIS 329 at *11 (N.D. Cal., January 6, 1995) (finding in dicta that the University of California and its Regents are government entities against which punitive damages can not be awarded in a Title VII suit).

### IV. Conclusion

Defendant CSUB's motion to dismiss and strike is GRANTED.  Plaintiff Barefield's breach of contract, breach of the covenant of good faith and fair dealing, and 42 U.S.C. §1981 causes of action are DISMISSED with PREJUDICE.  Plaintiff Barefield's prayer for punitive damages is STRICKEN.  The remaining causes of action are Cal. Gov't Code §12940 et seq., Title VII, and intentional infliction of emotional distress; Plaintiff Barefield does not have leave to amend.

IT IS SO ORDERED.

Dated:    **March 28, 2006**                        **/s/ Anthony W. Ishii**
0m8i78                                                    UNITED STATES DISTRICT JUDGE