IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LASHAWN BAREFIELD, | ) | CASE NO. CV-F-05-00633 AWI/ |
| | ) | TAG |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | AND ORDER DENYING IN |
| | ) | PART AND GRANTING IN |
| THE BOARD OF TRUSTEES OF THE | ) | PART DEFENDANTS' |
| CALIFORNIA STATE UNIVERSITY, | ) | MOTION FOR SUMMARY |
| BAKERSFIELD, JIM GEORGE, | ) | JUDGMENT, AND DENYING |
| DIANE HENDRICKSON, | ) | IN PART AND GRANTING IN |
| MARK MURIE, DOES 1 through 50, | ) | PART SUMMARY |
| inclusive | ) | ADJUDICATION OF ISSUES |
| | ) | |
| Defendants. | ) | |
| | ) | |

This case comes before the Court on Defendants' motion for summary judgment or, in the

alternative, motion for summary adjudication.  Plaintiff Lashawn Barefield ("Barefield"), an

African American female, has sued her employer and various individuals alleging racial

discrimination under federal and state law, retaliation, and intentional infliction of emotional

distress relating to the university's failure to promote her to a position as director of student

activities.   Defendants are The Board of Trustees of the California State University, Bakersfield

("CSUB"); James H. George (sued as "Jim George") ("George"), Diane Hendrickson

("Hendrickson"), and Mark Murie ("Murie").  This Court denies in part and grants in part

Defendants' motion for summary judgment.

## FACTUAL HISTORY

The following facts are presented in the light most favorable to Plaintiff, the non-moving party.

Plaintiff has been employed with CSUB since January 2001 as a tenure-track counselor in the university's counseling center.  On August 19, 2003, CSUB posted an opening for the position of director of student activities, Position 891.  Barefield, who holds a master's degree and chaired a university committee related to students and substance abuse, applied for the position. Plaintiff received the support of her supervisor Diane Hendrickson, who told her she was a "shoe in" for the position and that she was certain to get an interview because Barefield was "more than qualified."  After Plaintiff submitted her application, Hendrickson approached Plaintiff after a managers' committee meeting where the director of student activities position was discussed, and told Plaintiff that she would be one of the candidates for an interview and that she should get ready for her interview.

Plaintiff, however, was not given an interview.  Mark Murie, an employee in CSUB's human resources department, initially reviewed the applications for Position 891 and recommended an applicant pool of the applicants he determined were the five most qualified candidates to be interviewed.  These candidates were invited to interview.  Joseph Lowder ("Lowder"), CSUB's first choice candidate and a non-African American, received a second interview.  On December 4, 2003, CSUB sent a letter to Lowder informing him that due to the current budget situation the university was postponing filling the position, but that he would be placed on an eligibility list as the top candidate.  On December 9, 2003, Barefield received a letter informing her she was not being considered for Position 891.  When Plaintiff was not considered for an interview, she spoke with Brian McNamara, the representative of the California Faculty Association regarding filing a discrimination grievance.  Plaintiff claims to have filed a grievance in January 2004, and then a second grievance in February 2004.

In June 2004, CSUB hired an existing CSUB employee, Marina Avalos-Kegley ("Kegley"), a non-African American female who was in the process of obtaining her master's degree, as interim director of student activities. Although the university claimed that Position 891 was cancelled due to lack of funding, it hired Kegley as interim director of student activities before it cancelled recruitment for Position 891. According to Plaintiff, CSUB improperly reclassified and awarded Kegley the interim director of student activities position, even though the requirements for Position 891 and the interim position were the same, in order not to give the position to Plaintiff. Barefield alleges that CSUB racially discriminated against her by failing to promote her to the director of student activities position because she was passed over in favor of a less-qualified, non-African-American candidate. Plaintiff alleges she is more qualified than Kegley for the position. Kegley completed her master's degree in 2004 and did not have the same work experience as Plaintiff. Kegley had not applied for Position 891 at the time it was posted or previously expressed interest. When a permanent director of student activities position was reposted as Position 1010 in April 2005, Kegley was ultimately hired as the permanent director. Plaintiff did not apply for Position 1010.

Plaintiff also claims that CSUB and the individual defendants retaliated against her after she filed her discrimination grievances, a discrimination complaint with the Equal Employment Opportunity Commission in November 2004 and her Complaint filed in May 2005 instituting this action. Plaintiff claims Kegley's reclassification was retaliatory. A holiday credit was withheld from Plaintiff's paycheck. When the permanent director of student activities position was posted as Position 1010, Plaintiff claims that Murie changed the qualification requirements to exclude Plaintiff, even though there were no substantive changes in duties between Position 891 and Position 1010. Plaintiff also maintains that James H. George, CSUB provost and vice president for academic affairs, gave her a negative performance evaluation during her annual review. According to Plaintiff, she had received positive evaluations before her discrimination complaints. Finally, Plaintiff claims that Hendrickson excluded her from a department meeting

3

where Hendrickson informed the counseling department that they were required to attend a ball to celebrate CSUB's 35th Anniversary and to inaugurate CSUB's new president.  By the time Plaintiff found out that her colleagues in the counseling department were attending as a department, Plaintiff was unable to purchase a ticket.  As a result of the denial of the promotion and the retaliatory acts, Barefield alleges she has suffered emotional and physical harm for which she is receiving medical care.

**PROCEDURAL HISTORY**

Plaintiff filed her complaint against CSUB on May 10, 2005.  The complaint was addressed to the Superior Court of California, County of Kern but was filed in the United States District Court in Fresno.  The complaint alleged violations of 42 U.S.C. § 1981, the California Fair Employment and Housing Act, California Government Code § 12940, *et seq.* ("FEHA"), breach of contract, breach of the covenant of good faith and fair dealing, and intentional infliction of emotional distress.  Plaintiff filed a First Amended Complaint ("FAC") on July 21, 2005 that was identical to her initial complaint, only addressed to the United States District Court.  Defendant filed a motion to dismiss Barefield's § 1981 claims and contract claims for failure to state a claim upon which relief can be granted under Fed. R. Civ. Proc. 12(b)(6).  Defendant also sought dismissal of the entire suit for lack of federal subject matter jurisdiction under Fed. R. Civ. Proc. 12(b)(1) on the assumption that the § 1981 claims would be dismissed.  Alternatively, the motion sought to strike Barefield's request for punitive damages under Fed. R. Civ. Proc. 12(f).  Barefield opposed the motion in its entirety.  While the matter was under submission, Barefield filed a motion to amend the FAC under Fed. R. Civ. Proc. 15, which was granted by the magistrate judge.

Barefield filed a second amended complaint ("SAC") on November 17, 2005, which added a claim for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* ("Title VII").  The SAC mooted Defendant's Rule 12(b)(1) motion since federal subject matter jurisdiction would remain regardless of dismissal of Barefield's § 1981 claim.  Defendant

moved again to dismiss various claims in the SAC and to strike Barefield's punitive damages

claims.  This Court granted Defendant's motion and dismissed with prejudice Plaintiff's § 1981

claims and contract claims, as well as Plaintiff's prayer for punitive damages. The remaining

causes of action were discrimination under FEHA and Title VII, and intentional infliction of

emotional distress.

Plaintiff filed a third amended complaint ("TAC") on June 5, 2006, adding a claim for

retaliation under FEHA, California Government Code § 12900, *et seq*.  The TAC also added

individual defendants James H. George, Diane Hendrickson, and Mark Murie.  The TAC is the

operative complaint.

On April 20, 2007, Defendants moved for summary judgement or, in the alternative, for

summary adjudication on all claims.  Plaintiff did not file a timely opposition, but the Court

granted Plaintiff's *ex parte* motion to amend the briefing schedule on May 22, 2007.  Plaintiff

filed her opposition on May 25, 2007.  Defendants filed a reply on June 4, 2007.  The Court took

the matter under submission on June 11, 2007.

**UNDISPUTED FACTS**

The parties do not dispute the following facts:

1.      Plaintiff applied for Position No. 891.

2.      Murie initially reviewed the applications for Position 891 and recommended an

applicant pool of the applicants he determined were the five most qualified candidates to be

interviewed.

3.      Hendrickson was not on the selection committee for Position 891.

4.      George was the provost at the time Plaintiff applied for Position 891.

5.      Plaintiff did not apply for Position 1010.

6.      George recommended Plaintiff for another probationary year, which was awarded

by the president.

7.      Plaintiff went on a leave of absence on December 7, 2004 and returned to work on

January 3, 2005.

8.     In November 2005, Plaintiff brought the issue of her holiday credit to the attention of the human resources department, the issue was researched, and she was immediately given a credit.  Plaintiff used her personal holiday on November 14, 2005.

9.     On May 20, 2005, CSUB had a ball to celebrate it 35th Anniversary and to inaugurate its new president.  Plaintiff missed the counseling department's meeting at which her peers were instructed to attend the ball.  Plaintiff did not purchase a ticket before they were sold out.

### LEGAL STANDARD ON SUMMARY JUDGMENT

Summary judgment is proper if "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. Rule Civ. P. 56(c).  Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).   The moving party need not support is motion with evidence negating the nonmoving party's claim, but it "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  After the moving party meets this initial burden, the nonmoving party "by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment any inferences drawn from the underlying facts must be viewed in

the light most favorable to the party opposing the motion.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587-588 (1986).  The court does not weigh the evidence or determine whether Plaintiff's allegations are true but determines whether there is a genuine issue of fact for trial.  *See Cornwell v. Electra Central Credit Union,* 439 F.3d 1018, 1027 (9th Cir. 2006).  The evidence presented by the parties must be admissible.  Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1181-82 (9th Cir. 1988).

The Ninth Circuit has set a "high standard for the granting of summary judgment in employment discrimination cases ... [W]e require very little evidence to survive summary judgment' in a discrimination case, 'because the ultimate question is one that can only be resolved through a 'searching inquiry'– one that is most appropriately conducted by the factfinder, upon a full record.'"  *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996), quoting *Lam v. University of Hawaii*, 40 F.3d 1551, 1563 (9th Cir. 1994).

In the alternative, Defendants move for summary adjudication of fourteen issues if summary judgment is not granted.  Summary adjudication is proper when a court does not enter judgment upon the whole case or for all the relief requested by the moving party.  *See* Fed. R. Civ. P. 56(b).  Rule 56 requires the court to ascertain what material facts exist without substantial controversy and issue an order accordingly.  *See id.*  At trial, such facts shall be deemed established.  *See* Fed. R. Civ. P. 56(d).

## DISCUSSION

## I.   Evidentiary Objections

Defendants object to much of the evidence filed by Plaintiff in her opposition brief.[1]

---

[1]This Court also notes that Plaintiff's evidence fails to conform to the local rules relating to the filing of deposition testimony, in particular the prohibition against filing an entire deposition electronically and failing to file excerpts of the deposition with referenced exhibits. *See* Local Rules 56-260, 5-133(j), and 43-142.  Plaintiff did not lodge a copy of her brief or supporting evidence with the Court.  Plaintiff also without explanation filed errata to her exhibits two weeks after she filed her brief.  The Court expects Plaintiff to be familiar with and comply with the local rules, and Plaintiff is admonished that she and her counsel must follow the local rules.  Plaintiff's failure to follow this district's local rules creates an unnecessary and time-consuming burden on this Court.

Given the resolution of certain issues, it is not necessary for the Court to rule on each objection individually.  The Court, however, addresses Defendants' blanket objection to all non-deposition exhibits attached to the Declaration of Waukeen McCoy In Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("McCoy Declaration").  Defendants argue that Plaintiff's attorney lacks personal knowledge to authenticate these documents.  Authentication is a "condition precedent to admissibility," and this condition is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims."  *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002); Fed. R. Evid. 901(a).  The only exhibits offered by Plaintiff are attached to her attorney's declaration.

Plaintiff was given two opportunities to respond to Defendants' objections to her evidence, including Defendants' authentication objections.  The first response filed by Plaintiff only addressed Defendant's supplemental objections and failed to respond to the authentication objections.  Plaintiff was ordered to file a response to all of Defendant's objections, including those based on authentication.  Plaintiff's second response to the authentication objections merely stated the general proposition that an attorney can authenticate documents produced in discovery and cited a handful of cases discussed below.  Plaintiff cited to *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 n.12 (9th Cir. 1996) for the proposition that documents attached to an attorney's declaration are authenticated when they are offered against the party who produced the documents during discovery.  Plaintiff correctly states the principle of law, but fails to apply that principle to this case by offering evidence that the exhibits attached to the McCoy Declaration were in fact produced by Defendants during discovery.  *Orr*, a more recent Ninth Circuit case, outlined the requirements for authentication-by-production by a party opponent.  The Ninth Circuit ruled that when a party attempts to introduce a document by attaching it to the declaration of that party's attorney, Rule 56(e) requires that the attorney have personal knowledge of the document.  *See Orr*, 285 F.3d at 777.  An attorney's declaration may lay a foundation for authentication if the attorney drafted the document, witnessed the author

draft the document, or is familiar with the author's signature. *Id*. Authentication-by-production is permitted when the party identifies who produced the document, or if the party opponent admits to having produced it. *Id*. Where these threshold requirements are not met, the evidence is inadmissible. *See id*. at 777-778.

Although in *Maljack*, the Ninth Circuit stated without discussion that the district court did not err in considering documents attached to an attorney declaration when the opposing party produced the documents, many of the documents were on the opposing party's letterhead, and the opposing party did not contest their authenticity, *see Maljack*, 81 F.3d at 889 n.12, *Orr* emphasizes that there must be some evidence on the record indicating that the documents in question were actually produced by an opposing party in order to allow authentication-by-production. *See Orr*, 285 F.3d at 777-778. Even the cases cited by Plaintiff require more than mere attachment to an attorney declaration for authentication. *In re Homestore.com, Inc. Securities Litigation*, 347 F. Supp. 2d 769, 781-782 (C.D. Cal. 2004) is instructive. There the court found that only those documents that plaintiff, the party offering the documents, identified as having being produced by the parties in discovery were authenticated. *See In re Homestore.com*, 347 F. Supp. 2d at 781 (emails between defendant and third parties deemed authentic because plaintiff identified the documents as being produced by defendant in discovery). The court excluded those documents where the record did not contain a declaration or other testimony authenticating the document. *See id.* at 782 (memorandum of interview by law firm hired by defendant to conduct forensic audit not properly authenticated and inadmissible where "[t]he record does not contain a declaration or other testimony authenticating this document."). *See also Anand v. BP West Coast Products LLC*, 484 F. Supp. 1086, 1092 n.11 (C.D. Cal. 2007) (relying on attorney declaration stating the exhibit was produced by the opposing party during discovery in making its determination that the exhibit in question was authenticated).

Here, Plaintiff offers no argument or evidence that the documents attached to the McCoy

9

Declaration were produced by the opposing party during discovery.  Plaintiff fails to identify who produced the exhibits attached to the McCoy Declaration, and CSUB has not admitted to producing the documents, except perhaps those it attached to its declarations.  *See Orr*, 285 F.3d at 777.  The Court notes that there are some indicia on the documents that under *Maljack* might be sufficient for authentication.  For example, some of the documents are on CSUB letterhead and bear bates stamps indicating the documents were produced in discovery.  There are, however, at least two different sets of bates stamps on the exhibits and when examining a document the Court can only speculate as to the source of the bates stamps because Plaintiff failed to identify which bates stamps were used by which party.[2]

The Court notes that Defendants' blanket objection to Plaintiff's exhibits unwittingly, and improperly, includes within its scope many of the same exhibits that Defendants themselves attach to their own declarations.  Once evidence has been authenticated by one party, it has been authenticated with regard to all parties.  5 Weinstein & Berger, *Weinstein's Federal Evidence*, § 901.02[3] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2007), citing *Orr*, 285 F.3d at 775-776 ("We now hold that when a document has been authenticated by a party, the requirement of authenticity is satisfied as to that document with regards to all parties, subject to the right of any party to present evidence to the ultimate fact-finder disputing its authenticity.").  Defendants' objections to these documents are overruled.  Accordingly, Plaintiff's Exhibits G, H, I, J, O, P, Q, R, T, Z, and CC are deemed authenticated because Defendants attached these same underlying documents to the Mark Murie Declaration.

Plaintiff's Exhibits F, K, L, M, N, S, U, V, W, X, Y, AA, BB, DD, and EE are not authenticated and therefore inadmissible.  McCoy's declaration does not lay a foundation for the exhibits.  McCoy neither created the documents nor witnessed their creation, and there is nothing indicating he is familiar with any signatures contained therein.  *See Orr*, 285 F.3d at 777.  The

---

[2]The fact that Plaintiff was given two opportunities to respond to Defendants' objections to her documents makes her failure to authenticate her documents or identify who produced them inexcusable.

exhibits are not authenticated by having been produced in discovery because McCoy has not

identified who produced them, nor has CSUB admitted to producing them. *Id.* Of course,

although these exhibits themselves are not admissible, evidence proffered by Plaintiff reflecting

the substance of these documents may be admissible. *See, e.g.*, *Maljack*, 81 F.3d at 889 n.12.

The Court is not required to examine the entire file for evidence establishing a genuine issue of

material fact where the evidence is not set forth in the opposing papers with adequate references.

*See Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir.1988) ("The district

judge is not required to comb the record to find some reason to deny a motion for summary

judgment."); *Southern California Gas Co. v. City of Santa Ana,* 336 F.3d 885, 889 (9th Cir.

2003) ("A party opposing summary judgment must direct our attention to specific, triable

facts.").

## II.   Race Discrimination Claim Against CSUB under Title VII and FEHA[3]

The parties agree that this case is governed by the burden-shifting framework established

in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973).[4]  Under *McDonnell Douglas*, a

plaintiff has the initial burden to establish a prima facie case of racial discrimination by showing:

(1) that plaintiff belongs to a racial minority; (2) that plaintiff applied and was qualified for a job

for which the employer was seeking applications; (3) that, despite plaintiff's qualifications,

---

[3]Defendants' briefs assume that all Defendants, including the individual defendants, are being sued for racial discrimination.  Plaintiff's opposition brief did not argue that the individual defendants were accused of discrimination, but rather that they were accused of retaliation. The Court's review of Plaintiff's TAC indicates that only CSUB is sued for discrimination.  *See* TAC ¶¶ 21-31.

[4]California courts have adopted *McDonnell Douglas* to determine claims under FEHA and look to federal courts' interpretation of Title VII.  *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal. 4th 1028, 1042; *Clark v. Claremont University Center*, (1992) 6 Cal. App. 4th 639, 662. ("Although the state and federal antidiscrimination legislation differ in some particulars, their objectives are identical, and California courts have relied upon federal law to interpret analogous provisions of the state statute.")  (internal citations omitted).  Both the FEHA and Title VII of the Federal Civil Rights Act prohibit employers from discharging or otherwise discriminating against a person on the basis of race in compensation, terms, conditions, or privileges of employment. *Id*.  Accordingly, this Court will use the same analysis for Plaintiff's FEHA and Title VII claims.

plaintiff was rejected; and (4) that, after plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *McDonnell Douglas*, 411 U.S. at 802. The Supreme Court noted that prima facie proof varies greatly from case to case, and the four specific elements are "not necessarily applicable in every respect to differing factual situations." *Id. at* 802 n.13. "The burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (same).

Once plaintiff establishes a prima facie case, the prima facie case creates a rebuttable "presumption that the employer unlawfully discriminated against the employee." *Burdine*, 450 U.S. at 254. The burden of production then shifts to the employer "to articulate a legitimate, nondiscriminatory reason for the plaintiff's rejection." *Warren v. City of Carlsbad*, 58 F.3d 439, 442 (9th Cir. 1995). "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Burdine*, 450 U.S. at 255.

If the employer sustains this burden, the plaintiff must then demonstrate that the proffered nondiscriminatory reason is merely a pretext for discrimination. *Id*. at 256. Plaintiff can prove pretext either "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang v. University of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000). Plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting the prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons. *Id*.

## A.   Prima Facie Case

The parties dispute whether Plaintiff establishes a prima facie case of failure to promote

on the basis of race.[5]  Defendants concede that Plaintiff can establish that she is a member of a

minority, that she applied and was qualified for Position 891, and that she was rejected, but argue

that Plaintiff cannot establish the last element of the prima facie case, that the position remained

open after she was rejected.  According to Defendants, Plaintiff cannot make this showing

because a more qualified applicant was selected and, more importantly, because the position was

actually never filled because CSUB lost funding.  Plaintiff's opposition brief does not directly

respond to these arguments but argues that the position remained open and that it was eventually

given to a non-African-American who was less qualified than Barefield.

   Defendants' argument that Barefield has failed to meet the fourth prong of *McDonnell*

*Douglas* is without merit.  The Ninth Circuit has specifically rejected the argument that a

discrimination plaintiff fails to establish the fourth prong of *McDonnell Douglas* if the position is

given to another candidate.  In *Hagans v. Andrus*, 651 F.2d 622 (9th Cir. 1981) a gender

discrimination case, the district court applied the *McDonnell Douglas* test strictly and ruled that

plaintiff failed to meet the fourth prong, reasoning that because the position was filled by a male

candidate it did not remain open.  On appeal, the Ninth Circuit reversed and observed that the

Supreme Court has reiterated the flexibility of the *McDonnell Douglas* test.  *Id*. at 625.  The

Ninth Circuit noted that several qualified people applied for one job that would necessarily be

filled by one of them.  *Id*.  The plaintiff's rejection necessarily occurred simultaneously with the

hiring of another candidate, and the position could not possibly remain open.  *See id*.  As the

court noted, to "apply rigidly the *McDonnell Douglas* test to this situation would deny any

plaintiff the opportunity to establish a prima facie case, no matter how blatant the

_____

[5]Defendants also argue that the position for which Plaintiff applied was not a promotion
and that her theory of the case is flawed.  According to Defendants, the director of student
activities was a non-tenured staff position and Plaintiff is a tenure-track member of the faculty.
Defendants also note that Position 891 paid less than Plaintiff's position as a counselor.
Defendants' arguments are inapposite.  The fact that Position 891 may be a lateral move within
the university or a non-tenured position does not diminish Plaintiff's claims that she was
unlawfully discriminated against when she applied for Position 891, whether it was in the context
of a promotion or a new hire.

13

1    discrimination." *Id.* Thus, the fact that another candidate was selected for Position 891 does not

2    preclude Barefield from satisfying the requirement that the position remain "open."

3        That Position 891 was eliminated months later due to budgetary reasons also does not

4    prevent Plaintiff from establishing a prima facie case.  The "open" position requirement merely

5    requires that some vacancy exist at the time the application is made.  *See Gay v. Waiters' and*

6    *Dairy Lunchmen's Union, Local No. 30*, 694 F.2d 531, 547-48 (9th Cir. 1982).  This is true even

7    if the position is later eliminated for budgetary reasons.  *See Reynolds v. School Dist. No. 1,*

8    *Denver, Colo.,* 69 F.3d 1523, 1535 (10th Cir. 1995) (elimination of a position for ostensibly

9    budgetary reasons, if done for racially motivated reasons, can potentially form the basis of a

10   discrimination claim).  Furthermore, this Court is mindful that "[t]he function of the McDonnell

11   Douglas prima facie case is to eliminate the two most common reasons why an applicant may be

12   rejected: an absolute or relative lack of qualifications, or lack of an open position." *Gay*, 694

13   F.2d at 547, citing *International Broth. of Teamsters v. U.S.*, 431 U.S. 324, 358 n.44 (1977).  For

14   our purposes, what matters is that the position was open at the time Plaintiff submitted her

15   application and at the time the alleged discriminatory employment action took place, even if that

16   position was later closed.[6]

17       Thus, Barefield has established a prima facie case of discrimination and a rebuttable

18   presumption of unlawful discrimination.

19   **B.**    **CSUB has Articulated Legitimate Non-Discriminatory Reasons for Rejecting**

20          **Barefield**

21       CSUB must now set forth legitimate non-discriminatory reasons for not selecting

22   Barefield.  CSUB's burden is one of production, not persuasion, thereby involving no credibility

23   _____

24       [6]In their reply brief Defendants argue that, as to the qualification prong of *McDonnell Douglas*, Barefield has failed to meet "her burden of proving that she was more qualified tha[n]

25   Joseph Lowder," the candidate selected for Position 891.  Plaintiff has no such burden given that Defendants conceded in their briefs that Plaintiff was qualified.  *See Hagans*, 651 F.2d at 625 n.3

26   ("The government concedes that Hagans was qualified for the job.  This is all that is necessary to satisfy the qualification prong of McDonnell Douglas.  It is not necessary for Hagans to show

27   that she was more qualified than Brock.").

28

assessment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).  CSUB articulates the following non-discriminatory reasons for rejecting Barefield: (1) Plaintiff was minimally qualified and therefore not among the five most qualified selected to interview; (2) a more qualified candidate was eventually offered the position; and (3) the director of student activities position was closed because funding was lost.  Defendants also state that Murie did not discriminate against Barefield because when he conducted the initial review of the applications he was not aware of Barefield's race.

> **C.**     **Plaintiff has Presented Genuine Issue of Fact that Some of Defendants' Non-Discriminatory Reasons are Pretextual**.

Once Defendants present legitimate non-discriminatory reasons, the presumption of discrimination "drops out of the picture," and Plaintiff has the new burden of proving that the proffered reasons were a pretext for discrimination.  *See Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1148 (2006), quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993).  A plaintiff can prove pretext either "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang*, 225 F.3d at 1127.  Circumstantial evidence of pretext must be specific and substantial in order to survive summary judgement.  *Godwin v. Hunt Wesson, Inc.* 150 F.3d 1217, 1222 (9th Cir. 1998).  Once a plaintiff establishes a prima facie case of discrimination, "any indication of discriminatory motive ... may suffice to raise a question that can only be resolved by a factfinder," and for that reason "summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the crux of a Title VII dispute is the elusive factual question of intentional discrimination." *Warren v. City of Calsbad*, 58 F.3d 439, 443 (9th Cir. 1995).  Nevertheless, "[w]hen evidence to refute the defendant's legitimate explanation is totally lacking, summary judgment is appropriate, even though plaintiff may have established a minimal prima facie case based on a *McDonnell Douglas* type presumption."

*Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890-91 (9th Cir. 1994).

Relying on *Hicks* Defendants argue that Plaintiff must not merely discredit Defendants' proffered reasons, but she must also persuade the court that the actual motive was intentional discrimination.  Defendants misconstrue the applicability of *Hicks* to a motion for summary judgment.  "At the summary judgment stage, a plaintiff's burden is not high." *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 746 (9th Cir. 2003), citing *Wallis*, 26 F.3d at 889.  Plaintiff must only show that a rational trier of fact could, on all the evidence, find that the employer's explanation was pretextual and that therefore its action was taken for impermissibly discriminatory reasons.  *Id*.  If plaintiff does so, then summary judgment for an employer is inappropriate.  *Id*.  Furthermore, Defendants' argument was recently rejected by the Ninth Circuit in *Lindsey*, a case applying the *McDonnell Douglas* framework to a 8 U.S.C. § 1981 claim.  The *Lindsey* court noted that *Hicks* evaluated a decision based on a complete record, which requires a different analysis from that of a summary judgment motion where all factual inferences must be made in favor of the non-moving party.  *Lindsay*, 447 F.3d at 1148-49.  The Ninth Circuit also noted that *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133 (2000), clarified *Hicks* and unequivocally stated that "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Id*., *quoting Reeves*, 530 U.S. at 147.  Thus, evidence of the falsity of an employer's proffered reasons along with attacks on credibility are "valuable forms of circumstantial evidence ... [that] could lead a factfinder to infer discrimination, especially when no other legitimate reason could exist for the challenged behavior." *Id*.  *See also Noyes v. Kelley Services*, 488 F.3d 1163 (9th Cir. 2007) (finding district court misapplied *Hicks* to case on summary judgment).

Barefield's "burden at the summary judgment stage is not great." *Warren*, 58 F.3d at 444.  The amount of evidence required at summary judgment is "very little." *Lyons*, 307 F.3d at 1113.  Barefield cannot, however, rely on generalizations. *Warren*, 58 F.3d at 444.  She must produce evidence of facts that either directly show a discriminatory motive or show that CSUB's

1   explanation for her rejection is not credible.  *Id.*

2               **1.      Plaintiff's Qualifications for Director of Student Activities**

3          Plaintiff offers what she argues is ample evidence that she was highly qualified for

4   Position 891 in the form of her deposition testimony, and the statements and testimony of

5   Hendrickson and Murie.

6                    **a.      Barefield's Deposition Testimony**

7          According to Barefield, she was qualified for Position 891 because she had considerable

8   experience working with the student activities office initiating, developing, planning, and

9   organizing campus events; advanced human relation skills as a marriage and family therapist;

10  and a master's degree.  These qualifications and skills were listed on the job posting for Position

11  891.[7]  *See* Exh. J to McCoy Decl.[8]  The thrust of Barefield's testimony is that her experience on

12

13          [7]The "Qualifications" section of the job announcement for Position 891, in relevant part,
    provides:

14

15                  Requires graduation from a four-year college or university
                    including job related upper division or graduate course work and
                    three years of progressively responsible professional student
16                  services work experience.  A Masters degree in a directly related
                    field is preferred and may be substituted for one year of experience.
17                  A Doctorate degree and the appropriate internship or training in
                    counseling or guidance may be substituted for the three years of
18                  experience.  Candidates possessing related practical work
                    experience in a related program area, preferably in a higher
19                  education setting, will be given priority.  Applicants should possess
                    an understanding of the relationship of student affairs programs to
20                  the educational process; be able to initiate, develop and effectively
                    manage a broad range of activities programs, including
21                  coordination of campus clubs and organizations; have
                    demonstrated the ability to work independently and with a
22                  minimum of supervision; must be able to plan, organize and
                    equitably resolve individual and student organizational issues and
23                  concerns; and possess and utilize advanced human relation skill
                    which allow them to interact with highly visible student groups
24                  while helping them resolve their problems as they continue to
                    function in the university environment.

25
    *See* Exh. J to McCoy Decl.  The job announcement also indicates that: "Only those applicants
26  possessing experience most directly related to the immediate needs of the office will be invited to
    appear before a Qualifications Appraisal Board for the purpose of appraising training, experience
27  and interest in the position."  *Id*.

28                                              17

CSUB's alcohol and drug prevention committee, especially her close work with the student

activities office, and her work with student groups on campus, qualified her for the director of

student activities position because she had practical experience in student affairs.  *See* Deposition

of LaShawn Barefield ("Barefield Depo.") p. 70-72, Exh. A to Declaration of Waukeen McCoy

("McCoy Decl.").[9]  She also states that as a licensed marriage and family therapist she possessed

advanced human relations skills, another of the desirable traits listed in the job posting.  *Id*.

Finally, she notes that although it is not a requirement, the job posting expresses a preference for

a masters' degree, which she has held since 1995.  *Id*.  Barefield testified that she felt these

qualifications would be sufficient to at least receive an interview.[10]  *Id*.

---

[8]Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment incorrectly states that the job posting is attached as Exhibit A to the McCoy Decl.; the document is actually attached as Exhibit J.  Defendants objection to this document on authentication grounds is overruled because Defendants attached the same document to the Murie Declaration.

[9]Defendants object to this testimony on the grounds that it was not attached as part of Exhibit A to the McCoy Decl.  The Court notes that several pages of the exhibit Plaintiff cited in her opposition brief were not attached to the exhibit filed with Plaintiff's brief.  Several additional pages of Barefield's and Murie's deposition were filed by Plaintiff as errata two weeks after Plaintiff had filed her opposition and, more importantly, after Defendants had already submitted their reply brief.  Plaintiff did not explain her failure to file these missing pages when she filed her opposition brief, for which this Court had already granted Plaintiff an extension on an *ex parte* basis.  Although the Court recognizes the potential for prejudice where a party submits additional evidence after briefing, this Court has discretion to consider the evidence.  Defendants suffer no prejudice because Defendants were on notice as to the specific evidence Plaintiff was relying on because the opposition cited to page and line numbers.

Defendants object to this testimony on best evidence grounds.  The best evidence rule requires that "[t]o prove the content of a writing ... the original is required."  Fed. R. Ev. 1002.  Defendants' objection is overruled.  Plaintiff does not seek to prove the contents of the document.  Additionally, the job posting is attached to the declaration of Murie and to the McCoy Decl.

[10]Additionally, this Court's review of the record indicates that Barefield testified that at the time she applied she had been working at CSUB from 2001-2003 "so that had given [her] a couple years of experience working in the higher education setting."  *Id*. at p. 71.  She also states that "if you have a degree or training in counseling, that that would be even substituted for the years of experience."  *Id*.  Plaintiff's opposition brief does not rely on this testimony and an examination of the job posting may reveal why.  Plaintiff's work experience at CSUB had been as a counselor; it is not clear that this qualifies as the "three years of progressively responsible

1   Plaintiff argues that despite her credentials, she was denied the opportunity to interview

2   for the position based on her race.  Plaintiff testified that she felt that she was discriminated

3   against based upon race because there was no other reason to explain why she was not

4   interviewed for the position when she exceeded the qualifications for the position.  *See* Barefield

5   Depo., p. 100-102.[11]  According to Barefield, a non-black colleague who served on the alcohol

6   and drug committee she chairs received an interview for Position 891 although this colleague did

7   not have Barefield's educational background or the experience.  *Id*. at 105-106.  Plaintiff also

8   testified that she met and exceeded the qualifications for the job and that she documented that in

9   her application.  *Id*. at 106.  She also stated that at CSUB there were only two African-Americans

10  holding a director position on campus.  *Id*.  She also testified that she had her masters' degree

11  almost ten years before the individual who was given the position, Kegley, who is a non-black

12  colleague.  *Id*. at 106-107.

13  Plaintiff does not support her deposition testimony that she was discriminated on the

14  basis of race with corroborating evidence, whether direct or circumstantial.  "Mere conclusory

15  assertions of discriminatory intent, embodied in affidavits or deposition testimony, cannot be

16  sufficient to avert summary judgment.  The court must satisfy itself that there is sufficient 'direct

17  or circumstantial evidence' of intent to create a genuine issue of fact for the jury, before it can

18  deny summary judgment...."  *Lindsey v. Shalmy,* 29 F.3d 1382, 1385 (9th Cir. 1994), citing

19

20  professional student services work experience" mentioned in the job posting although this is an
    issue for the factfinder.  Additionally, Plaintiff seems to misread what advanced degrees may be

21  substituted for work experience.  The job posting provides that "A Doctorate degree and the
    appropriate internship or training in counseling or guidance may be substituted for the three years

22  of experience" and not that a degree or training in counseling could be substituted for experience.

23  [11]Defendants' object to this testimony on relevance, improper lay opinion, and vagueness
    grounds.  Defendants' objections are overruled.  Barefield's testimony about her qualifications is

24  clearly relevant to the issue at hand, employment discrimination on the basis of race.  The
    testimony is also not improper lay opinion.  *See* Fed. R. Evid. 701 (Lay testimony in the form of

25  opinions or inferences is proper when "(a) rationally based on the perception of the witness, (b)
    helpful to a clear understanding of the witness' testimony or the determination of a fact in issue,

26  and (c) not based on scientific, technical, or other specialized knowledge....").  As to vagueness,
    the Court finds that the testimony is not so vague and abstract as to prevent a rational factfinder

27  from inferring discrimination.

28  19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986) (an issue is not genuine unless a reasonable jury could return a verdict for that party).  Plaintiff does not present evidence of the qualifications or background of her non-black colleague on the alcohol and drug committee who received an interview, but merely implies that her colleague was less qualified than she without identifying the basis for her conclusion.  As to Barefield's testimony that she met and exceeded the qualifications, the only evidence Barefield offers is her application for Position 891 and resume, but these are not properly authenticated and inadmissible.  (Even if they were authenticated, this evidence would not create a material issue of fact because they do not document the same broad student activities experience that Plaintiff testified to having.[12])  Plaintiff also offers no evidence, other than her bare assertion, regarding the number of African-Americans at CSUB holding a director position.  Statistical evidence may create an inference that an employer acted in a discriminatory fashion.  *See Warren*, 58 F.3d at 443, citing *McDonnell Douglas*, 411 U.S. at 805 (suggesting that statistics as to an employer's employment policy and practice "may be helpful" in establishing that a particular employment decision was in

---

[12]Plaintiff attaches her resume as Exhibit K, and her application for Position 891 as Exhibit L to the McCoy Declaration.  Assuming Barefield's testimony regarding her qualifications and experience is true, these exhibits would be insufficient to create a material factual issue regarding Plaintiff's qualifications for the director of student activities position.  Exhibit K lists Plaintiff's educational professional experience in counseling, teaching, and running seminars and workshops.  It also lists that she is chair of the alcohol and drug education committee, and a member of various other campus committees.  In Exhibit L, under the "Qualifications Summary," Plaintiff writes: "I have experience working with students on a counseling level and as an advisor for a student group on campus.  My experience and training have enabled me to work effectively with students from different cultures and ethnicities.  I have been able to initiate, develop, plan, and organize campus-wide educational events including OKSOBERFEST and Safe Spring Break."  Additionally, in the "Employment History" section, Plaintiff lists her employment at CSUB as a Counselor ("Provide individual counseling to students who are experiencing personal and academic problems which interfere with their ability to succeed at the university.  I also teach general studies courses."), and her employment at a Child Guidance Clinic as a Program Therapist ("I provided family, individual, and group counseling to families with a variety of emotional and behavioral difficulties.  In addition, I served as a liaison between the clinic, schools, and the community.").  Contrary to Plaintiff's testimony, her resume and application do not document her qualifications for a director of student activities position; that is, Exhibits K and L are insufficient for a rational factfinder to conclude that she was qualified for the position because they do not convey the same broad student activities experience that Plaintiff testified to having at her deposition.

conformance with a general pattern of discrimination).  Plaintiff offers Exhibit N, which Plaintiff represents to be a document reflecting the ethnic make up of the applicants for Position 891.  *See* McCoy Decl. ¶ 15.  Exhibit N is unauthenticated and inadmissible, however even if the Court were to consider this document, it would not be sufficient to create a material fact as to CSUB's alleged racial discrimination because evidence of the applicant pool's racial breakdown is not probative of the numbers of African-Americans holding any position at CSUB, let alone a director position.  This evidence would be insufficient to create an inference of a general pattern of discrimination at CSUB.  Plaintiff's deposition testimony alone, unsupported by corroborating evidence, does not create a material fact sufficient to withstand summary judgment.

More fundamentally, Plaintiff's evidence does not address Defendants' contention that while Plaintiff was qualified for Position 891 she was not among the most qualified.  Plaintiff presents no evidence of her qualifications vis-a-vis those of the other applicants in the form of, for example, the applications or resumes of the other applicants for Position 891, including those selected to be interviewed.  Plaintiff's testimony raises no factual issue that she was among the most qualified of the applicant pool.  At most, Plaintiff's evidence may create a material fact that she was more qualified than Kegley, who was offered the interim director of student activities position.  Plaintiff's qualifications vis-a-vis those of Kegley are discussed in Part II.C.2, *infra*.

Barefield also testified that Hendrickson informed her that she was highly qualified for the position and that she was one of the candidates selected to interview for Position 891.  Hendrickson's statements are examined in the following section.

This Court does not find that Plaintiff was not qualified for the director of student activities position, but merely that her testimony creates no triable issue of material fact that CSUB's reason for not interviewing her is pretextual.

### b.    Hendrickson's Statements to Plaintiff

Barefield testified at her deposition that when she informed Hendrickson that she was applying for the position, Hendrickson told her that she was a "shoe in" for the position, and

either that she was "extremely qualified" or "more than qualified" for the position.  Barefield

Depo., p. 56-57.[13]   More importantly, Hendrickson told Barefield that she was one of the five

candidates selected to interview for Position 891 after Hendrickson returned from a management

committee meeting where the position was discussed.  According to Barefield, Hendrickson

approached her while Barefield was making copies and told her "that she had returned from the

management team meeting and told me that they had five candidates for the position of the

Student Activities Director and informed me to get prepared for my interview."  *Id*. at 75.

Barefield testified that Hendrickson told her "that I would be one of the five candidates to be

interviewed for the position."  *Id*. at p. 78.  Barefield asked Hendrickson if she was sure and

Hendrickson responded that she was sure.  *Id*.

At her deposition Hendrickson testified that she could not recall telling Barefield that she

believed Barefield was qualified or that she was "more than qualified."  Hendrickson Deposition

("Hendrickson Depo."), p. 31-32, Exh. D to McCoy Decl.  Hendrickson characterized herself as

being "supportive" of Barefield's application and as a "cheerleader," and agreed that she would

not generally be supportive of an employee applying for a position for which she knew the

employee was not qualified.  *Id*. at p. 29-34.  Hendrickson also testified that she discussed

aspects of the management committee meetings relating to the position with Barefield.  *Id*. at p.

38-39, 46-48, 50.  That management committee included members of the selection committee for

the director of student activities position.  *Id*.  Hendrickson admits that after one of these

meetings she told Barefield that she would be interviewed, but in her deposition testified that this

was based on her belief that all on-campus applicants would be interviewed.  *Id*. at p. 47-50.

Drawing all inferences in favor of Plaintiff, Hendrickson did tell Plaintiff that she was

highly qualified for the position and that she would be one of the candidates receiving an

---

[13]Defendants also object to this testimony on hearsay, foundational, and vagueness grounds.  Barefield's testimony regarding what Hendrickson told her is non-hearsay and admissible as an admission of a party opponent under Fed. R. Ev. 801(d).  Defendants' other objections are also overruled.  *See* n.11, *supra*.

interview.  Hendrickson's assessment of Barefield's qualifications may not be highly probative because it is undisputed that Hendrickson was not on the selection committee for Position 891 and Plaintiff offered no evidence that Hendrickson was involved in the selection of the candidate for Position 891, or that Hendrickson reviewed or had knowledge of the qualifications of other applicants.  However, Hendrickson's statement to Barefield that she would be interviewed is sufficient for a rational factfinder to find that Barefield was qualified and indeed actually selected to interview.  Taken in the light most favorable to Plaintiff, Hendrickson sat on a management committee with members of the selection committee and admitted that at management committee meetings the status of the director of student activities position was discussed.  Hendrickson admits she communicated information from the meetings to Barefield.  Hendrickson admits telling Barefield that she would be interviewed.  When coupled with Hendrickson's repeated encouragement and "cheerlead[ing]," Barefield has presented an issue of fact that she may have been selected for an interview and indeed among the most qualified candidates.  At summary judgment "[o]ur place is not to weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial."  *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1196 (9th Cir. 2001).

### c.     Murie's Statements

Barefield also offers Mark Murie's deposition testimony as evidence that she was qualified, and Murie's declaration as well as other statements as evidence of pretext.  Murie was the member of CSUB's human resources department who initially reviewed the 39 applications for Position 891 and recommended an applicant pool of the five most qualified candidates.  Murie Declaration ("Murie Decl."), ¶ 4.  At his deposition, Murie testified that Barefield met the basic qualifications for the position,[14] but that his review of Barefield's application indicated that

---

[14]Defendants object to Murie's testimony regarding Plaintiff's qualifications on foundation grounds.  Defendants' objections are overruled.  Murie testified that he reviewed the 39 applications, the selection criteria, and determined whom to recommend for an interview. This is sufficient foundation for Murie's testimony.

"there [was] not enough information provided for a determination to be made at this pass whether this individual is either accepted or rejected as an applicant."  Murie Deposition ("Murie Depo."), Exh. B to McCoy Decl., p. 70-73.  Murie testified that his selection criteria was based on the qualifications listed in the job announcement, including the expressed preferences.  *Id*. at p. 65-66.  The criteria applied by Murie to screen the initial pool of applicants were "two years student life related experience with master's degree."  *Id.* at p. 65.  Murie testified that no policy required him to use the job announcement preferences rather than the minimum requirements to evaluate applicants.  *Id.* at p. 68-69.  Although Barefield did not meet the selection criteria used by Murie, she was not rejected outright.  Instead, Murie testified that he did not make a determination whether she would be accepted or rejected.[15]  *Id*. at p. 70-73.  However, Murie testified that ultimately Barefield "was not selected for an interview as a result of comparing [her to] the other applicants in the applicant pool."  *Id*. at p. 72.

       The only evidence of pretext that Plaintiff provides is that Murie stated in his declaration that he was not aware of Plaintiff's race when he reviewed her application.  *See* Murie Decl. ¶ 4 ("When I receive the applications, the Applicant Flow form, which is the only part of the application upon which ethnic information appears, has already been removed.  At the time I reviewed the applications, I was unaware of Plaintiff's ethnicity.").  *See also* Murie Depo. at p. 94 ("I did not know the ethnicity of the applicants.") *and* at p. 97 (Q: "'So is it your testimony ... that when you were accepting and/or rejecting candidates in 2003 for the Director of Student Activities position, you did not know that LaShawn Barefield was an African-American?'  A:

---

[15]Murie testified that Barefield received a question mark on the sheet he used to record his assessment of the applicants.  A question mark indicates that "there's not a determination whether [an applicant] will be accepted or rejected at that point."  *Id.* at p. 55.  Applicants with question marks next to their names, such as Barefield, were not interviewed.  *Id.* at p. 71. Plaintiff submits this sheet as Exhibit M to the McCoy Decl., but it is inadmissible because Plaintiff failed to authenticate it.  Murie's testimony regarding the document is, however, admissible.  The testimony regarding the sheet is not subject to attack on best evidence rule grounds.  Fed. R. Ev. 1002 requires that "[t]o prove the content of a writing ... the original is required."  Here, Murie's testimony is not offered to prove the contents of Exhibit M, but rather to determine Murie's motives as they relate to Plaintiff's discrimination claims.

'That's correct.'").   Plaintiff argues that this "strains credulity" because Murie reviewed Barefield's resume which lists classes that she has taught, including "The African American Experience."[16]  This is sufficient evidence that could allow a rational factfinder to find that Murie was aware of Plaintiff's race, notwithstanding his declaration and testimony to the contrary. Murie's knowledge of Barefield's race is not necessarily evidence of discrimination, but the fact that he insists that he did not know Barefield's race notwithstanding evidence of race in the resume and application he reviewed seems internally inconsistent and, viewed in the light most favorable to Plaintiff, could give rise to an inference that the reason he denied knowing her race was to disguise his use of an impermissible motive.

Plaintiff also provides evidence that Murie misrepresented to her that Dr. Bill Perry, CSUB's assistant vice president for student life, was involved in the initial review of the applications.  Murie responded to an email Barefield wrote to Kelly Garcia, the head of human resources, after she received her rejection letter.  *See* Murie Decl. ¶ 7 and Exhibit H to Murie Decl.  Murie in his response wrote that "In accordance with our campus recruitment process, the hiring department chairperson, Dr. Bill Perry, and I reviewed the approximately 40 applications for the position and determined an appropriate candidate pool based upon the qualifications as reflected in the position announcement."  *See* Exhibit H to Murie Decl.  It is undisputed that Murie alone initially reviewed the applications for Position 891 and recommended an applicant pool of the applicants he determined were the five most qualified candidates to be interviewed. *See also* Murie Decl. ¶ 4; Murie Depo., p. 39.  Dr. Perry does not appear to have had any role in the initial selection process.  A rational factfinder could also find that Murie's statement to the

---

[16]Plaintiff also argues that Murie had access to a database listing the race of applicants and that he therefore had access to information regarding Plaintiff's race.  As Defendants argue, Plaintiff's evidence requires too many inferences to be reliable.  Unlike the application and resume that he testified to having reviewed firsthand, Murie would have to have access to the database, checked it, and the information on the database would have to have been accurate. Plaintiff has offered no evidence of any of these predicate facts.  Also, although Exhibits K and L, Barefield's resume and application, are inadmissible, Murie's testimony regarding his review of the resume may be considered.

1  contrary that Dr. Perry participated in the initial selection process was to cover an impermissible

2  motive.

3        Plaintiff has provided sufficient evidence that Defendants' proffered reason that she was

4  not among the most qualified may have been pretextual.

5                 **2.**       **Whether a More Qualified Candidate Was Offered the Position**

6        A threshold question for this Court is whether to treat Position 891 and the interim

7  position as two different positions or whether, as Plaintiff alleges, they are really the same

8  position.  This is a central question in part because it determines the candidate against whom

9  Plaintiff is gauged: Joseph Lowder, who was offered the director of student activities position, or

10 Marina Avalos-Kegley, who received the interim position and subsequently the full time position

11 as director of student activities.  Defendant has offered evidence in the form of interview

12 evaluations and an offer letter that Lowder was deemed the most qualified candidate for Position

13 891 and placed at the top of an eligibility list for the position in December 2003, pending

14 resolution of budget issues.  *See* Exhs. C, D, E, F to Murie Decl.  Plaintiff argues that the

15 budgetary rationale for not hiring Lowder was pretext to avoid giving her the position, that

16 Kegley was reclassified into the position, and thus that Barefield must be gauged against Kegley.

17 Plaintiff, however, offers no admissible evidence to support her argument.[17]  Thus, only

18 Lowder's qualifications are considered.

19       Defendants argue that Plaintiff was minimally qualified and that Lowder, a more

20 qualified candidate, was offered the position.  Plaintiff does not offer evidence of her

21 qualifications vis-a-vis those of the interviewees or Lowder.  However, Plaintiff has already

22 raised an issue of material fact that she may have been one of the applicants selected for an

23 _____

24     [17]Plaintiff's evidence may have created a triable issue of fact that the positions were the
   same.  Exhibit X is an email from Bill Perry to Olga Lopez of CSUB's human resources

25 department, where Perry writes that "The duties described in the attached position description
   number 891, Director of Student Activities, are exactly the same duties Marina Avalos-Kegley

26 will be fulfilling in the Interim Director of Student Activities position."  Exhibit X is
   inadmissible on authentication grounds.  Plaintiff's arguments regarding improper

27 reclassification are addressed in next section, *infra*.

28                         26

interview, based on Hendrickson's testimony.  That evidence is also sufficient to raise a factual

issue that she was at least as qualified as Lowder.  Lowder may well have been more qualified

than Barefield, but it is not the role of this Court to determine who was the most qualified, but

only to determine if there is a genuine issue of fact for trial.  *See Lyons*, 307 F.3d at 1117

("[W]hether appellants were as qualified as any of the promotion recipients is a factually

intensive question best resolved by the jury.").  Plaintiff has raised an issue of fact that she may

have been as qualified as Lowder because she has raised a factual issue that she was among the

five candidates to be interviewed.  Thus, Plaintiff has provided sufficient evidence that

Defendants' proffered reason may be pretext.

### 3.    Whether the Position was Closed Due to Budgetary Reasons

Barefield argues that Position 891 was not closed for budgetary reasons, but rather that

CSUB's proffered decision is pretext because the interim director of student activities position

was created in its stead.  Plaintiff argues that the interim position was created for and awarded to

Kegley through an improper reclassification of her position.

Defendants present substantial evidence that Position 891 was not awarded due to

budgetary reasons.  Lowder was notified that budgetary reasons precluded CSUB from awarding

him the position several days before Barefield received her rejection letter.  *See* Murie Decl.,

Exhs. F (Letter from Kellie Garcia to Joseph Lowder, dated December 4, 2003) (informing

Lowder that he was first choice candidate but that due to budgetary reasons Position 891 was not

being filled at that time) and G (Letter from Kellie Garcia to LaShawn Barefield, dated

December 9, 2003) (informing Barefield she is not being considered for Position 891).

Furthermore, there are several other references to budgetary issues in Defendants' internal

memoranda.  *See, e.g.*, Murie Decl., Exh. E (Memorandum from Bill Perry to Kellie Garcia,

dated November 21, 2003) ("Dr. Hibbard and I would like to offer position #891 Director of

Student Activities to Joseph Lowder, in the Spring quarter, after the budget situation has been

resolved.").  *See also* Murie Decl. ¶ 6.

1    According to Plaintiff, the interim position was reclassified in violation of university

2    policy to cover up the fact that the position was still open.  Evidence that the university did not

3    follow its established procedures may be circumstantial evidence of pretext.  However, Plaintiff

4    offers no admissible evidence that university procedures were violated.[18]  Plaintiff also offers

5    evidence that in her view demonstrates that Kegley was not qualified for and lacked the relevant

6    experience to be awarded the director of student activities position.  Even when taken in the light

7    most favorable to Plaintiff, the fact that Kegley may be less qualified than Plaintiff is irrelevant

8    because Plaintiff offers no admissible evidence of an improper reclassification or violation of

9    university policy in creating the interim position or hiring Kegley to fill that position.  Plaintiff

10   does not offer any probative evidence that CSUB's budgetary rationale is pretextual.[19]

11

12   In summary, Plaintiff has provided sufficient evidence to allow a rational factfinder to

13   determine that some of CSUB's proffered reasons for not hiring her may be pretextual, thereby

14   precluding summary judgment on the race discrimination claim.  Plaintiff has raised a triable

15   issue of fact that she was qualified, was selected for an interview, and that Murie may have used

16   impermissible motives due to his insistence that he did not know Plaintiff's race and his

17   representation that Bill Perry was involved in the selection process.  Plaintiff raised no issue of

18   fact that the budgetary rationale was pretextual.  Defendants' motion for summary adjudication is

19   denied as to Issue No. 1 because Plaintiff has raised a material issue of fact regarding whether

20   CSUB discriminated against her; and denied as moot as to Issue Nos. 2-4 regarding whether the

21   individual defendants discriminated against Plaintiff, because the TAC does not indicate the

22

23

24       [18]Plaintiff offers Exhibit F, the CSUB Employee Handbook, as evidence that the proper
     reclassification procedures were not followed.  Exhibit F may have been sufficient to create an
     issue of fact that CSUB did not follow its established procedures.  This exhibit, however, is
25   inadmissible on authentication grounds.

26       [19]Plaintiff also presents Exhibit Y, which indicates that Kegley received a salary increase
     after she was reclassified, which could lead a reasonable factfinder to find that the budgetary
27   rationale was pretextual.  This exhibit, however, is inadmissible on authentication grounds.

28                                                        28

1    individual defendants are sued for discrimination.

2

3    **III.    Retaliation under FEHA**

4            At the summary judgment stage, an employee's allegations of retaliation under FEHA are

5    evaluated under the burden shifting analysis of *McDonnell Douglas* to determine whether there

6    are triable issues of fact. *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal. 4th 1028, 1042, citing

7    *Morgan v. Regents of University of California* (2000) 88 Cal. App. 4th 52, 68.  An employee

8    must first establish a prima facie case of retaliation.  The burden then shifts to the employer to

9    provide legitimate non-retaliatory reasons for its actions. *Id*.  Plaintiff must then provide direct

10   or indirect evidence that the proffered reasons are pretextual.

11           To make a prima facie case, an employee must show that: (1) the employee engaged in a

12   protected activity; (2) the employer subjected the employee to adverse employment action; and

13   (3) a causal link existed between the protected activity and the employer's action. *Id*.  Protected

14   activity includes filing a complaint or grievance. *Yanowitz*, 36 Cal. 4th 1042.  An adverse

15   employment action is any action that "materially affect[s] the terms and conditions of

16   employment." *Id*. at 1036.  When considering whether an employee has been subjected to

17   adverse employment action, the Court may consider the "totality of the circumstances" rather

18   than each discreet act in isolation. *Id*.  The causal connection requirement may be satisfied by

19   "an inference derived from circumstantial evidence, such as the employer's knowledge that the

20   employee engaged in protected activities and the proximity in time between the protected action

21   and the allegedly retaliatory employment decision." *See Fisher v. San Pedro Peninsula Hosp.*

22   (1989) 214 Cal. App. 3d , 615, citing *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988).

23           As a threshold matter, Plaintiff relies on the Ninth Circuit's "deterrence test," articulated

24   in *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000), to argue that an adverse employment

25   action is any action "'reasonably likely to deter employees from engaging in a protected

26   activity.'"  This test was rejected by the California Supreme Court in *Yanowitz* for retaliation

27

28                                                    29

claims arising under FEHA.  *See Yanowitz*, 36 Cal. 4th at 1051.  The proper standard for defining

an "adverse employment action" under California law is the "materiality test," which requires

that an employer's adverse action "materially affect the terms and conditions of employment."

*See id.* at 1036.  When discussing this standard, the *Yanowitz* court explained that FEHA protects

an employee against unlawful discrimination with respect not only to ultimate employment

actions such as termination or demotion, but also to the entire spectrum of employment actions

that are reasonably likely to materially affect an employee's job performance or opportunity for

advancement in his or her career.  *See id.* at 1053-1054.  The materiality standard "must be

interpreted broadly to further the fundamental antidiscrimination purposes of the FEHA."  *Id*. at

1054.  Accordingly, this Court will apply *Yanowitz*'s materiality test to Barefield's alleged

adverse employment actions.

**A.      Prima Facie Case**

According to Barefield, she engaged in protected activities on four separate occasions:

January 5, 2004, when she filed a discrimination grievance with the California Faculty

Association ("CFA"), Exh. S to McCoy Decl.; February 20, 2004, when she filed her second

discrimination grievance, Exh. U to McCoy Decl.; November 22, 2004, when she filed her

complaint of discrimination with the U.S. Equal Employment Opportunity Commission

("EEOC") (not attached); May 2005, when she filed this action.

Plaintiff, however, does not provide sufficient factual support that she engaged in the

protected activities.  Exhibit S and U are not inadmissible on authentication grounds; although

Plaintiff appears to have written these documents, her attorney may not authenticate them on her

behalf because he lacks personal knowledge.  *See Orr*, 285 F.3d at 777.  Even if these documents

were authenticated, this Court's review of the record indicates that Barefield testified at her

deposition that she spoke with the CFA representative regarding filing a discrimination

grievance, but that she did not actually file a grievance with CFA.  *See* Barefield Depo., p. 87-93.

Additionally, she provides no evidence that the CFA representative communicated her

complaints to CSUB.  Plaintiff does not provide any evidence of her complaint of discrimination with the EEOC.  As to her legal Complaint in this action, the Court may take judicial notice that the Complaint was filed on May 10, 2005.[20]  Thus, the only protected activity for which *any* evidentiary support exits is the filing of the Complaint in this action in May 2005, and that is only through this Court's judicial notice.

Barefield argues that Defendants retaliated against her by: (1) reclassifying Kegley's position at CSUB in June 2004 to appoint Kegley as director of student activities; (2) withholding holiday credit from her paycheck in January 2005; (3) changing the criteria for the director of student activities position so Barefield would not qualify in April 2005; (4) issuing Plaintiff a poor performance evaluation in May 2005; and (5) isolating her from CSUB's May 20, 2005 inaugural ball that her non-African-American colleagues were asked to attend.  The first three of these alleged retaliatory actions, however, took place *before* the filing of Plaintiff's Complaint.  The latter two, viewing the facts in the light most favorable to Plaintiff, may have occurred after the Complaint was filed.  Plaintiff's performance review is dated May 9, 2005, one day before Plaintiff filed her Complaint.  At her deposition, however, Barefield testified that she received her performance review after she filed her Complaint.  *See id.* at p. 116-119.  Sufficient facts exist for a reasonable factfinder to conclude that the review was delivered after the Complaint was filed.  Additionally, the inaugural ball took place after the filing of the Complaint.

Defendants argue that Plaintiff has failed to set forth any facts that support that the acts Barefield alleges are adverse employment actions and that there is no causal connection.  Under *Yanowitz*, to survive summary judgment, Plaintiff must provide sufficient facts that the alleged adverse actions materially affect the conditions of her employment, including performance or

---

[20]The Court takes judicial notice of the filing of Plaintiff's Complaint on May 10, 2005 for the fact that it was filed and not for the truth of anything contained in the Complaint.  A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).

opportunity for advancement.  *See Yanowitz*, 36 Cal. 4th at 1036.  Plaintiff has met this burden.
A negative evaluation affects Plaintiff's current position as a tenure-track faculty member and her
future employment prospects as a tenured faculty member.  Being excluded from CSUB's
inaugural ball could affect perceptions of Plaintiff in her department and her prospects for tenure.
Defendants' causation arguments are not well-founded because the adverse employment actions
followed soon after Plaintiff filed her Complaint.

Thus, Barefield has established a prima facie case of retaliation.

## B.      Defendants Have Articulated Legitimate Non-Retaliatory Reasons for the Adverse Employment Actions

Defendants proffer the following legitimate business reasons: (1) Plaintiff was not issued
a poor performance evaluation due to her complaints because provost James George was not
aware of her complaints and, furthermore, because the evaluation echoed previous evaluations
and Plaintiff was recommended for another probationary year; (2) Plaintiff was not excluded
from the inaugural ball because invitations and a memorandum were mailed to faculty and staff,
including Plaintiff, Plaintiff missed the department meeting at which her peers were instructed to
attend, and furthermore, tickets were sold out by the time Plaintiff attempted to purchase one.

## C.      Plaintiff Fails to Present Genuine Issue of Fact that Defendants' Non-Retaliation Reasons are Pretextual

To survive summary judgement, Plaintiff must offer sufficient evidence that CSUB's
business reasons are pretext either indirectly, by showing they are internally inconsistent or
otherwise not believable, or directly by showing that they were motivated by her discrimination
complaints.  *See Morgan*, 88 Cal. App. 4th at 69.

### 1.      Barefield's May 9, 2005 Evaluation

Plaintiff is unable to provide sufficient evidence to show Defendants' business reasons
for her May 2005 evaluation are pretextual.  First, as evidence that George was aware of her
complaints when he issued the evaluation, Plaintiff offers deposition testimony by Murie that

complaints of discrimination filed by faculty members are handled by the provost's office.[21]

Plaintiff, however, has admitted she filed no formal complaints with CSUB.  Plaintiff offers no

evidence that her filed Complaint went to the provost's office.  Plaintiff merely argues that she

was a faculty member and thus her complaints went to the provost's office.  Had Plaintiff offered

such evidence, then George's knowledge of the complaints may have been inferred.

Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

produce a factual predicate from which the inference may be drawn.  *See Mayweathers v.

Terhune*, 328 F. Supp. 2d 1086, 1092-93 (E.D. Cal. 2004).  Plaintiff offers no evidence that the

provost knew of her legal Complaint, let alone that this knowledge would cause him to retaliate.

Barefield also maintains that she was issued a poor performance evaluation in retaliation

for her complaints.  Plaintiff's May 9, 2005 evaluation, in a section titled "Creative Activities

and Scholarship," provides that "Ms. Barefield is not making adequate progress in this area ... ¶

She needs to develop a research agenda that can ultimately produce a peer-reviewed publication.

She will need to make progress on this front during the coming year.  Certainly the file should

detail her research plans, and article should be in process.  ¶ Ms. Barefield does not meet

University expectations in this area."  Exh. C. to George Declaration ("George Decl.").  This

evaluation reflected critiques in reviews by two underlying committees, both of which predate

the provost's May 9 evaluation.  These evaluations by the counseling department and by the

university review committee contain similar remarks calling for her to publish.  *See* George

Decl., Exh. D (Unit RTP Evaluation, dated February 15, 2005) ("Furthermore, the Committee

encouraged Ms. Barefield to develop scholarly and research agenda compatible with her

counseling duties and other time commitments.") *and*  (University Review Committee, dated

April 1, 2005) ("The URC finds evidence in Ms. Barefield's file of creative activity and

---

[21]Defendants object to this evidence based on Murie's lack of knowledge and foundation, however even if the Court were to consider this evidence, given Plaintiff's failure to present any evidence that her complaints actually went to the provost's office, it is unnecessary for the Court to rule on this objection.

scholarship and suggests she move to the next step, publication.").  Plaintiff's 2004 annual

review, and the underlying committee reviews, contained similar remarks.[22]  Furthermore,

Plaintiff was recommended for and was granted an additional probationary year to continue in

her tenure-track position.  *See* Exh. C to George Decl.  Plaintiff presents no evidence that the

May 2005 evaluation is in retaliation for her complaints of discrimination, let alone any of the

underlying evaluations predating the May 2005 evaluation.

Plaintiff also argues that George ignored her extensive grant writing activities even

though these activities may fulfill the creative activities and scholarship requirement.[23]  George

testified that grant writing could be part of a process of scholarly activity, but that it itself is not

considered a scholarly activity.  *See* George Deposition ("George Depo."), p. 46-47.  Plaintiff

offers Hendrickson's deposition testimony that grant work applies toward the scholarly activity

---

[22]*See* George Decl., Exh. B (Barefield evaluation, dated May 7, 2004) ("Ms. Barefield has not made adequate progress in [the creative activities and scholarship] area.  She has been involved in grant development and administration.  However, she needs to develop a research agenda that can ultimately produce a peer-reviewed publication. ¶ Ms. Barefield meets minimally University expectations in this area."); Ex. D to George Decl. (Unit RTP Evaluation, dated January 28, 2004) ("Finally, we encourage her developing a scholarly and research agenda to the extent compatible with her counseling duties) *and* (University Review Committee, dated April 2, 2004) ("Ms. Barefield has been active in grant writing, grant management and serving on a peer-reviewed Expert Panel ... We suggest she consider publications in this area to fulfill the expectation for scholarly activities.").

[23]Plaintiff cites to over 100 pages of her own deposition testimony in support of her position that grant writing may satisfy scholarly activity.  The citation is to p. 11:14-119:9, and does not conform to Local Rule 56-260's requirement that supporting evidence include "a citation to the particular portions of any pleading, affidavit, deposition ... or other document" offered in support.  Furthermore, The Court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references.  *See Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir.1988) ("The district judge is not required to comb the record to find some reason to deny a motion for summary judgment."); *Southern California Gas Co. v. City of Santa Ana,* 336 F.3d 885, 889 (9th Cir. 2003) ("A party opposing summary judgment must direct our attention to specific, triable facts.").

Plaintiff also offers Exh. EE to McCoy Decl., an email message from Hendrickson to Barefield, where Hendrickson states that grant activity is scholarly activity.  This exhibit is inadmissible on authentication grounds, but even if the Court did consider this evidence Plaintiff's argument fails for the fundamental reason that she cannot show retaliation because she failed to offer evidence that George had knowledge of her complaints.

1    requirement, and that Barefield had met these requirements.  *See* Hendrickson Depo., p. 80-81,

2    85.  Assuming, as this Court must, that grant activity meets the scholarly activity requirement,

3    Plaintiff's evidence is still insufficient to survive summary judgment because she offers

4    insufficient evidence that the articulated non-retaliatory business reasons for her May 2005

5    evaluation are pretext and, more fundamentally, she offers no evidence that George knew of her

6    Complaint.

7                        **2.      Inaugural Ball**

8              Plaintiff does not provide sufficient evidence to allow reasonable factfinder to find she

9    was excluded from the inaugural ball.  Defendants provide evidence that the ball was widely

10   advertised on campus and that all members of the faculty received a "save-the-date" flyer, a

11   memorandum from the president, and were mailed personal invitations.  Garcia Declaration

12   ("Garcia Decl."), ¶ 4 and Exhibits A, B, C to Garcia Declaration ("Garcia Decl.").  Barefield was

13   on the spreadsheet of recipients for the mailed invitation.  *See id*.  Barefield presents no evidence

14   that she did not receive the university-wide announcements, and instead contends that

15   Hendrickson purposefully had a meeting when Barefield was absent to avoid informing her about

16   the event.  Hendrickson states in her declaration that during "regularly-scheduled meetings" for

17   the counseling department she discussed the ball, relayed that the counseling department was

18   required to attend, and that during a subsequent meeting relayed that the department was now

19   only encouraged to attend.  *See* Hendrickson Decl. ¶ 4.  Barefield was not present at the initial

20   meeting where Hendrickson relayed that the counseling department was required to attend.  *Id*.

21   Plaintiff's cited evidence, her deposition testimony, provides no support that she was excluded

22   from the meeting but merely that she did not attend the meeting.  *See* Barefield Depo., p. 123-

23   125.[24]  By the time she tried to buy a ticket, the ball was sold out.  *Id*.  Plaintiff offers no evidence

24   Defendants' reason is pretextual.

25   _____

26          [24]Defendants object to this testimony on vagueness, hearsay, speculation, and best
     evidence grounds.  Given resolution of this issue, it is not necessary for the Court to rule on these
27   objections.

28                                    35

1    Thus, Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

2

3    **IV.    Intentional Infliction of Emotional Distress**

4    Defendants argue that Barefield's intentional infliction of emotional distress ("IIED")

5    claim is barred by the exclusivity of the California's Worker's Compensation Act and that the

6    alleged conduct is not sufficiently extreme or outrageous.  Barefield argues that racial

7    discrimination is not covered by the worker's compensation act.

8    Discrimination claims are not "insulated from consideration in connection with the

9    exclusive remedies provided under workers' compensation," *Jones v. LA. Community College*

10   *Dist.* (1988) 198 Cal. App. 3d 794, 784, but rather a court must examine whether the employer's

11   conduct was a "normal part of the employment relationship."  *Cole v. Fair Oaks Fire Protection*

12   *Dist.* (1987) 43 Cal. 3d 148, 160.  Race discrimination is not a normal incident of employment.

13   *Watson v. Department of Rehabilitation*, 212 Cal. App. 3d 1271, 1287 ("Prohibited racial and

14   age discrimination are against the law and policy of this state.  Such discrimination is not a

15   normal incident of employment, no less for an employee of the state than for one employed in the

16   private sector.").  Relying on *Accardi v. Superior Court* (1993) 17 Cal. App. 4th 341, 352,

17   Defendants argue that emotional distress caused by normal employer conduct, such as

18   promotions, demotions, and criticisms of work practices are barred by the exclusive remedy of

19   the workers' compensation law.  *Accardi* does not support Defendants' argument and actually

20   recognizes that discrimination claims are not barred by the exclusivity rule.  *See Accardi*, 17 Cal.

21   App. 4th at 352 ("The Legislature, however, did not intend that an employer be allowed to raise

22   the exclusivity rule for the purpose of deflecting a claim of discriminatory practices .... Thus, a

23   claim for emotional and psychological damage arising out employment is not barred where the

24   distress is engendered by an employer's illegal discriminatory practices.") (internal citations

25   omitted).  Thus, Barefield's IIED claim is not barred by the workers' compensation laws.

26   To demonstrate intentional infliction of emotional distress, a plaintiff must show that the

27

28                                          36

conduct was "extreme and outrageous."[25]  *Cole*, 43 Cal. 3d 148, 155 n.7.  "Summary judgment is

proper if a claim cannot 'reasonably be regarded as so extreme and outrageous as to permit

recovery.'"  *Schneider v. TRW, Inc.*, 938 F.2d 986, 992 (9th Cir. 1991), quoting *Trerice v. Blue*

*Cross of California* (1989) 209 Cal. App. 3d 878.  Conduct, to be outrageous, must be so

extreme as to exceed all bounds of that usually tolerated in a civilized society.  *Schneider*, 938

F.2d at 992 (internal quotation omitted).  Under California law, an employer's discriminatory

actions may constitute outrageous conduct under an intentional infliction of emotional distress

theory.  *See Rojo v. Kliger* (1990) 52 Cal. 3d 65, 81.  Defendants premise their argument that the

conduct Barefield alleges is not discriminatory, let alone extreme and outrageous.  This Court has

found that Plaintiff has provided sufficient facts to allow a reasonable fact finder to find that

Defendants' behavior constituted employment discrimination.  These same facts are sufficient to

raise a triable issue of fact as to whether Defendants' conduct was so "extreme and outrageous"

as to permit recovery.  Thus, Defendants are not entitled to summary judgement on Barefield's

IIED claim.  Defendants' motion for summary adjudication as to Issue Nos. 5 and 6 are also

denied on the same grounds.

## CONCLUSION AND ORDER

The Court does not decide whether Plaintiff has proved that she was discriminated

against based on race–that is an issue for a fact finder.  The task for this Court is limited to

determining whether Plaintiff has produced sufficient facts to allow a reasonable factfinder to

find in her favor.  Plaintiff has met that burden for her discrimination claim and intentional

infliction of emotional distress; Plaintiff failed to meet that burden for her retaliation claim.

---

[25]A prima facie case of intentional infliction of emotional distress "requires (1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress." *Cole*, 43 Cal. 3d 148, 155 n.7.  The parties only dispute whether the alleged discriminatory conduct is sufficiently "extreme or outrageous" to survive summary judgment.

1        For the reasons stated in the above Memorandum Opinion, IT IS HEREBY ORDERED

2  that Defendants' motion for summary judgment is DENIED as to Plaintiff's discrimination

3  claims under Title VII and FEHA, and intentional infliction of emotional distress; and

4  GRANTED as to Plaintiff's retaliation claims under FEHA against all Defendants.  Defendants'

5  motion for summary adjudication in the alternative is DENIED on the merits as to Issue Nos. 1,

6  5, and 6, and DENIED as moot as to Issue Nos. 2-4, and 7-14.

7

8  IT IS SO ORDERED.

9  **Dated:   August 1, 2007**                    **/s/ Anthony W. Ishii**

                                              UNITED STATES DISTRICT JUDGE